NFE INTERNATIONAL, LTD., Plaintiff,

v.

GENERAL RESOURCE CORPORATION, Defendant.

No. 82 C 5638.

United States District Court,
N.D. Illinois, E.D.

Feb. 25, 1983.

Basil P. Mann, Nate F. Scarpelli, Merriam, Marshall & Bicknell, Chicago, Ill., for plaintiff.

Steven Gilford, Catherine T. Crowley, Donald V. Jernberg, Isham, Lincoln & Beal, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff NFE International ("NFE") sued General Resource Corporation ("General Resource") for trademark infringement, unfair competition and dilution. Jurisdiction is asserted pursuant to 28 U.S.C. § 1332,[1] 15 U.S.C. § 1121,[2] and 28 U.S.C. § 1338(a).[3] Presently pending before the Court is NFE's motion for a preliminary injunction against General Resource. For reasons set forth below, NFE's motion is granted.

NFE has been manufacturing industrial particle collectors, which are used to collect or convey particles of various sizes, for over ten years. Starting in or about 1970, NFE began to use HI–VAC as a trademark for its industrial pneumatic particle collectors and conveyors. NFE registered the trademark HI–VAC in the United States Patent and Trademark Office on May 28, 1974. Counsel for NFE subsequently filed Section 8 and 15 affidavits in an effort to satisfy various provisions of the Trademark Act of 1946, 15 U.S.C. § 1058[4] and 15 U.S.C.

---

1. 28 U.S.C. § 1332 provides in pertinent part that

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

2. 15 U.S.C. § 1121 states that:

The district and territorial courts of the United States shall have original jurisdiction and the courts of appeal of the United States shall have appellate jurisdiction, of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.

3. According to 28 U.S.C. § 1338(a)

The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

4. 15 U.S.C. § 1058 provides in pertinent part that

(a) Each certificate of registration shall remain in force for twenty years: *Provided,* That the registration of any mark under the provisions of this chapter shall be canceled by the Commissioner at the end of six years following its date, unless within one year next preceding the expiration of such six years the registrant shall file in the Patent and Trademark Office an affidavit showing that said mark is still in use or showing that

§ 1065.[5] On May 28, 1980, the Patent and Trademark Office accepted these affidavits, thus granting NFE the rights under the above sections of the Act and establishing NFE's exclusive right to use the mark under 15 U.S.C. § 1115.[6] In its complaint, NFE alleges that it has spent substantial funds to advertise and promote its products under the HI–VAC mark, and that the mark HI–VAC has become well known as a badge of origin of its products.

General Resource, according to NFE, manufactures equipment designed to remove particles and dust from gaseous streams which is competitive with NFE's products. NFE further claims that General Resource has adopted the trademark HIGH–VAC in connection with the advertising and sale of the equipment. Despite objections by NFE, General Resource has refused to cease using the mark HIGH–VAC.

General Resource characterizes its product as industrial filters, which remove particles from a gas or air stream forced through them by another device. It claims that it has used HIGH–VAC and HI–VAC since 1968 in its advertising materials, order forms and on its products themselves. General Resource currently uses the mark HIGH–VAC in connection with one of its products, a filter. The filter is known as a P/V HIGH–VAC SUPER JET and is custom made. This product, according to General Resource, has no competitive relationship to any of NFE's products.

A decision to grant or deny preliminary injunctive relief lies within the discretion of district courts. *American Hospital Association v. Harris,* 625 F.2d 1328, 1330 (7th Cir.1980). Our discretion, however, must be guided by four factors:

(1) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not enter;

(2) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant;

(3) whether the plaintiff has at least a reasonable likelihood of success on the merits; and

(4) whether the granting of a preliminary injunction will disserve the public interest.

*Wesley-Jessen Division of Schering Corp. v. Bausch & Lomb, Inc.,* 698 F.2d 862 at 864 (7th Cir.1983); *Helene Curtis Industries v. Church & Dwight Co.,* 560 F.2d 1325, 1330 (7th Cir.1977), *cert. denied,* 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978). We shall therefore consider in turn each of the above factors.

## A. *Likelihood of Success on the Merits*

Under Federal Trademark Law, the test for liability for infringement is whether the infringer's "use is likely to cause confusion, or to cause mistake, or to deceive . . . ." 15 U.S.C. § 1114(1). Thus, we must consider whether General Resource's use of the mark is likely to cause confusion in deciding whether NFE is likely to succeed on the merits. A number of factors must be analyzed in determining likelihood of confusion:

the degree of similarity between the marks in appearance and suggestion; the similarity of the products for which the name is used; the area and manner of

---

its nonuse is due to special circumstances which excuse such nonuse and is not due to any intention to abandon the mark. Special notice of the requirement for such affidavit shall be attached to each certificate of registration.

**5.** 15 U.S.C. § 1065 provides in pertinent part that

the right of the registrant to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable . . . .

**6.** According to 15 U.S.C. § 1115, unless certain defenses or defects are established

If the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the affidavit filed under the provisions of said section 1065 subject to any conditions or limitations stated therein.

current use; the degree of care likely to be exercised by consumers; the strength of the complainant's mark; actual confusion; and an intent on the part of the alleged infringer to palm off his products as those of another.

*Helene Curtis Industries v. Church & Dwight Co.,* 560 F.2d 1325, 1330 (7th Cir. 1977), *cert. denied,* 434 U.S. 1078, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978), citing *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena,* 433 F.2d 686, 705 (2 Cir.1970), *cert. denied,* 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971). Examination of the marks in question indicates their similar appearance: HI–VAC and HIGH–VAC are spelled similarly, although HI–VAC uses different script and colors. HIGH–VAC, moreover, is used only *in connection with the words* "Super Jet." When pronounced, however, the two marks are identical. Similarity in the sound of trademarks enters into a consideration of likelihood of confusion. *Grotrian, Helfferich, Schulz, T. Steinweg Nach F. v. Steinway & Sons,* 523 F.2d 1331, 1340 (2d Cir. 1975).

The parties present varying views concerning the similarity of their products. General Resource stresses that its product, which ranges in price from $15,000 to $80,000, is "an enormous stationary air filter used in industrial plants," while plaintiff's product is "essentially an industrial vacuum cleaner," and is mobile. NFE argues that a component of their product, the filter assembly, corresponds to General Resource's product and adds that its products can be installed permanently. NFE's products range in price up to $135,000, indicating that there is some overlap in price between the two products. There is no doubt in the instant case that the products are not identical; however, evidence submitted by the parties indicates that the products in question have very similar functions, namely to remove particulate matter from pneumatically conveyed gas or air. Both products, moreover, appear to be aimed at a national market; they are advertised in similar publications and would likely be purchased by industrial engineers for similar functions.

The strength of NFE's mark is weak, according to General Resource, because it is merely a descriptive term for the words "high vacuum." General Resource also asserts that NFE's mark, in an infringement action, would be susceptible to the defense of fair use. But as NFE points out, a plaintiff who demonstrates that his trademark is uncontestable under § 1065 of the Lanham Act establishes conclusively his exclusive right to use the trademark under § 1115. *Union Carbide v. Ever-Ready, Inc.,* 531 F.2d 366, 377 (7th Cir.1976), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). Once it has been established that a mark is uncontestable, it is presumed that the mark is non-descriptive or has acquired secondary meaning. *Id.* NFE's exclusive right to use the mark under § 1115 has been established, thus precluding an argument by General Resource that the mark is merely descriptive.[7] From the evidence submitted by the parties, it is unclear if there have in fact been instances of actual confusion between the parties' products. There was, at best, one instance of confusion between NFE's product and the product of another maker containing a HI–VAC label. But evidence of actual confusion is not required in order to prove a likelihood of confusion for purposes of a preliminary injunction. *Ideal Industries, Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1024 (7th Cir.1979), *cert. denied,* 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980). Evidence of actual confusion, however, is entitled to substantial weight. *Tisch Hotels, Inc. v. Americana Inn, Inc.,* 350 F.2d 609, 612 (7th Cir.1965). The evidence in the present case is sufficient to show that confusion between NFE's products and other manufacturers' products is likely.

Finally, we must examine whether there is intent on the part of General Resource to palm off their products as those of NFE. General Resource argues that it has used the term HIGH–VAC since 1968, well before NFE began using the mark HI–VAC. While NFE claims that it provided notice to General Resource that it was infringing

---

**7.** General Resource has not addressed the issue of the uncontestability of NFE's mark.

NFE's mark, General Resource insists that use of its mark does not constitute infringement. We are not prepared to find, based on the evidence before us, that General Resource intentionally palmed off their products as those of NFE. Nevertheless, a consideration of the aforementioned factors indicates that NFE has demonstrated likelihood of confusion between their products and those of General Resource. Thus, NFE has proven that its infringement suit is likely to succeed on the merits.

**B.  Adequacy of Legal Remedy**

 In addition to deciding whether NFE is likely to succeed on the merits, we must also decide whether NFE is likely to have an adequate remedy at law or will be irreparably harmed without an injunction. General Resource states that NFE has not lost any sales, maintains that the parties' products do not compete, and that confusion is not likely. But in trademark infringement cases, irreparable harm is readily found because of the victim's inability to control the nature and quality of the infringer's goods. NFE's loss of control over its reputation justifies a finding of irreparable harm even if it has lost no sales. *Wesley-Jessen Division of Schering Corp. v. Bausch & Lomb, Inc.,* 698 F.2d 862 at 867 (7th Cir.1983).

**C.  The Public Interest**

As to the third issue that must be considered, the public interest, General Resource offered no arguments indicating that the public would be harmed or disserved by an injunction in this case, which is the relevant inquiry. *Id.* at 868. Insofar as confusion between the parties' products appears likely, the public interest favors the issuance of an injunction against defendants.

**D.  Balancing the Hardships Faced by the Parties**

The final factor that must be considered is whether the threatened injury to NFE outweighs the threatened harm that an injunction might inflict upon General Resource. This factor calls for a relative balancing of hardships between NFE and General Resource. NFE would have this Court order General Resource to cease using the mark HIGH–VAC in association with the sale or advertising of its products; contrary to General Resource's contentions, NFE does not demand that it destroy all previously sold or distributed HIGH–VAC SUPER JET advertising materials and name plates. General Resource's products are custom designed; it has not argued that it has a substantial stock of products on hand which would have to be destroyed or altered as a result of the injunction NFE seeks. Since we have determined that NFE is likely to succeed on the merits, that it is suffering irreparable harm, and that an injunction would not disserve the public interest, we conclude that the balance of hardships favors the granting of this injunction. Pending the outcome of this case, General Resource is enjoined from future use of the mark HIGH–VAC on its advertising materials and products. The mark need not be obliterated from previously distributed advertising materials, nor from previously manufactured products; existing advertising materials containing the mark HIGH–VAC may be used, provided that the mark is obliterated.

Accordingly, NFE's motion is granted. It is so ordered.